Filed 6/17/22  P. v. Ortega CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B311073 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA223544) |
| v. | |
| JUAN MANUEL ORTEGA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Reversed and Remanded.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel Chang and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

This is an appeal from the denial of appellant Juan Manuel Ortega's petition for resentencing under Penal Code section 1170.95.[1] In 2004, Ortega was convicted of seven substantive offenses, including two counts of special circumstance murder (§ 187, subd. (a), counts 1 & 2), the only offenses at issue in this appeal. As to count 1, the jury found true the special circumstance allegations of multiple murder (§ 190.2, subd. (a)(3)) and that the murder was committed in the commission of carjacking and kidnapping (§ 190.2, subd. (a)(17)). As to count 2, the jury found true the special circumstance allegations of multiple murder (§ 190.2, subd. (a)(3)) and that the murder was committed in the commission of kidnapping (§ 190.2, subd. (a)(17)).

In 2006, this court modified Ortega's sentence and affirmed his conviction in all other respects. (See *People v. Ortega* (Mar. 30, 2006, B173836) [nonpub. opn.] (*Ortega I*).)

In May 2019, Ortega filed a verified petition for resentencing under section 1170.95, which provides that persons who were convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).)

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

Following appointment of counsel and briefing by the parties, on February 10, 2021, the court issued a written ruling summarily denying Ortega's petition.  In so ruling, the court stated that Ortega was ineligible for relief as a matter of law.  On the same date, the People filed a supplemental brief withdrawing its opposition to Ortega's position at the prima facie stage of review under the reasoning set forth in *People v. Torres* (2020) 46 Cal.App.5th 1168 (*Torres*), review granted June 24, 2020, S262011, overruled on another ground in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*); *People v. Smith* (2020) 49 Cal.App.5th 85 (*Smith*), review granted, July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250 (*York*), review granted November 18, 2020, S264954.  These cases hold that a jury's true finding under the felony-murder special circumstance statute (§ 190.2, subd. (a)(17)), made before the Supreme Court decided *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), cannot preclude eligibility for relief under section 1170.95 as a matter of law. (*York, supra,* at p. 258, *Torres, supra,* at p. 1173; *Smith, supra,* at p. 93.)

On appeal from the trial court's order, Ortega contends that the People are bound by the withdrawal of their opposition to Ortega's position at the prima facie stage of review.  He further contends that a felony-murder special circumstance finding does not establish ineligibility for relief as a matter of law and requests that we apply the *Torres* line of cases.

Despite the People's change in position in the trial court, the Attorney General contends on appeal that the *Torres* line of cases was

incorrectly decided, and that *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*) and its progeny should control our analysis. In *Galvan*, the court of appeal held that a felony-murder special circumstance finding predating *Banks* and *Clark* precludes relief under section 1170.95 as a matter of law. (*Id. at* pp. 1141–1143.) The Attorney General also asserts that even if the *Torres* line of cases is correct, Ortega is still ineligible for relief because his actions rise to the level of major participation and reckless indifference under *Banks* and *Clark*.

Consistent with our prior decisions on the issue, we reverse the trial court's order in light of the *Torres* line of cases. We also refrain from engaging, in the first instance, in the factfinding necessary to determine major participation and reckless indifference under the standards established by *Banks* and *Clark*. We reverse the order summarily denying Ortega's petition and direct the court to issue an order to show cause and proceed consistent with section 1170.95, subdivision (d).

### FACTUAL AND PROCEDURAL BACKGROUND

We recite the factual background from *Ortega I*. The principal witness in the case was a drug seller who used the name Juan Perez. His actual name is Ivan Sanchez, and we use that name in this summary even though the briefing refers to him as Perez.

In August 2001, Sanchez's drug supplies were running low and he needed to replenish. He contacted another drug seller, Santo Pleitez, who agreed to try to find a drug supplier. Pleitez came up with a third

person, later identified as Samuel Nolasco, who agreed to take Sanchez and Pleitez to a supplier at a particular location. On August 27, 2001, Sanchez drove his Toyota Corolla, with Pleitez as a passenger, to a location where they picked up Nolasco, who directed them to another location where they would meet the drug supplier. Sanchez was carrying $4,500 in cash to pay for the drugs he planned to buy. He told the two men that he did not want to deal with gang members, and they assured him that the person they were to meet was trustworthy.

They drove to a taqueria, and Nolasco indicated that he saw the drug supplier arriving. Nolasco walked over to a parking lot and soon returned, telling the men that they had to go to another location because too many people were present at this one. They then drove to a nearby restaurant. As they drove off, Nolasco pointed to a Toyota 4-Runner that also was leaving the parking lot. The 4-Runner stopped at a gasoline station, and the three men continued to the location identified by Nolasco. They pulled into a parking space at that location. The 4-Runner soon arrived and backed into another space. Nolasco exited the Corolla and went over to the 4-Runner. He returned suddenly, saying, "Start the car, they're going to rob us." Sanchez followed that instruction and began backing out of the car space, but he was blocked by the 4-Runner.

There were three men in the 4-Runner. One was later identified as Ortega. He exited the 4-Runner carrying a handgun. Another man with a handgun also exited.

Ortega went to the driver's side of the Corolla, where Sanchez was seated. He put the gun through the open window to Sanchez's head,

then reached inside and ran his hand around Sanchez's waist. He ordered Sanchez out of the car on threat of killing him. Sanchez exited the vehicle and ran to the doorway of the restaurant. He saw Nolasco trying to exit the vehicle, but the other man from the 4-Runner told him not to get out and pushed him back inside the Corolla. That man told Pleitez, then seated on the right side of the rear seat, to move behind the driver's seat. The man then got into the seat Pleitez had just vacated. Ortega got into the driver's seat of the Corolla and drove off. The 4-Runner followed, driven by the third person who had remained in that vehicle.

Sanchez asked someone at the restaurant to call the police, then flagged down a cab, which took him to his home. He placed the $4,500 he was carrying inside the residence, then went to a police station to report the carjacking. He did not then tell police how he happened to be at the location where the carjacking occurred.

Later that afternoon, a Los Angeles City employee, stopped at a traffic light, heard two gunshots, and on moving forward when the light changed, saw a body in the roadway. The body was later identified as that of Nolasco. Later that evening, a man in an apartment noticed a white Lincoln parked along a freeway offramp. The interior light was on, and the man saw a person slumped over with his wrists apparently tied behind his back. Shortly after that, he heard a gunshot, and the Lincoln drove off. Pleitez's body was found in a lot by the offramp the next day. His hands were tied behind his back; he had been shot in the head at close range. Ortega's fingerprint was found inside the recovered Corolla.

6

Ortega was taken into custody for the murders in November 2001. At trial, the prosecution introduced evidence, via a gang expert, that Ortega was a member of the Lincoln Heights gang, which was heavily involved in selling narcotics.

While in jail Ortega was visited by his sister, Patricia Ortega. Their visits were secretly tape recorded. Apparently suspecting as much, they spoke in "Pig Latin," both in English and Spanish. In one exchange, Patricia warned Ortega not to say anything about driving the car, and Ortega replied, "I already told them that," but also said he told police that he was high. They also spoke of Patricia sneaking something into the jail for Ortega in a balloon.

By information, Ortega was charged with two counts of first degree murder (§ 187, subd. (a), counts 1 & 2), three counts of carjacking (§ 215, subd. (a), counts 3-5), and two counts of kidnapping (§ 207, subd. (a), counts 6 & 7). As to count 1, the information alleged the special circumstance allegations of multiple murder (§ 190.2, subd. (a)(3)) and that the murder was committed in the commission of carjacking and kidnapping (§ 190.2, subd. (a)(17)). As to count 2, the information alleged the special circumstance allegations of multiple murder (§ 190.2, subd. (a)(3)) and that the murder was committed in the commission of kidnapping (§ 190.2, subd. (a)(17)). Also, numerous enhancements were charged. Following trial, a jury convicted Ortega on all counts. As to the murder counts, the jury found true the special circumstance allegations, that a principal personally and intentionally discharged a firearm which caused the victims' deaths (§ 12022.53, subds. (b)-(d), (e)(1)), and that the murders were committed for the

7

benefit of and in association with a criminal street gang (§ 186.22, subd. (b)(1)).  The jury also found true firearm and criminal street gang allegations as to the carjacking and kidnapping counts.  Ortega was sentenced to an overall term of life without the possibility of parole plus 165 years.

In his direct appeal, this court modified Ortega's sentence by striking the gang enhancements (§ 186.22, subd. (b)), and by ordering that the abstract of judgment be amended to reflect imposition of the middle term (rather than the upper term) for the kidnapping and carjacking counts.  In all other respects, this court affirmed the judgment.

In May 2019, Ortega filed a verified petition for resentencing under section 1170.95, claiming entitlement to relief because he was convicted of two counts of first degree murder under a felony-murder theory.  Ortega also claimed he was not the actual killer.  Ortega requested that counsel be appointed on his behalf.  The court appointed counsel, the People filed an opposition, and Ortega filed a reply.  The People then filed a supplemental opposition.

On February 10, 2021, the court issued its written ruling denying Ortega's section 1170.95 petition.  The court stated Ortega was ineligible for relief as a matter of law because (1) he was convicted by a jury of two counts of first degree murder with felony-murder special circumstances, (2) he was never eliminated as one of the actual killers, and (3) at the very least, he was a direct aider and abettor who personally participated in every aspect of the crimes charged.  The same day, the People filed a supplemental brief withdrawing their opposition

8

to the issuance of an order to show cause based on the Los Angeles County District Attorney Office's new policy adopting the reasoning set forth in the *Torres* line of cases.[2]

## DISCUSSION

Ortega contends the court erred by denying his section 1170.95 petition without issuing an order to show cause in reliance on the jury's true findings under the felony-murder special circumstance statute (§ 190.2, subd. (a)(17)) that pre-date *Banks* and *Clark*. We agree with his contention and decline the Attorney General's request to engage in factfinding in the first instance under *Banks* and *Clark* to determine if Ortega was a major participant who acted with reckless indifference to human life.[3]

1. *Applicable Law*

The legislature enacted S.B. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to

---

[2]   We note, as acknowledged by both parties, that the timing of the court's order and the People's brief withdrawing its opposition is unclear from the record.

[3]   Ortega contends that the People's withdrawal of opposition to an order to show cause precludes the Attorney General on appeal from contesting the propriety of such an order. We disagree, and in any event the People's change of position did not obviate the trial court's duty to determine whether defendant made a prima facie case (taking the factual allegations in the petition as true) for section 1170.95 relief. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 978 (*Drayton*).)

9

murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e); *Lewis, supra*, 11 Cal.5th at p. 959.)

Section 1170.95, as enacted by S.B. 1437, permits individuals who were convicted of felony murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following the amendments to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (See § 1170.95, subd. (a).) A petition for relief under section 1170.95 must include a declaration by the petitioner that he is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1170.95, subd. (b)(1).)

Subdivision (e) of section 1170.95 provides that after the parties submit briefing, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that [he or she] is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (See also *Lewis, supra*, 11 Cal.5th at p. 962 [subd. (e) provides only for "a single prima facie" stage of review].)

To determine whether the petitioner has made a prima facie case for section 1170.95 relief, the court ""takes petitioner's factual

10

allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.'" (*Drayton, supra,* 47 Cal.App.5th at p. 978, quoting Cal. Rules of Court, rule 4.551(e)(1).)  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' (*Drayton*, *supra,* at p. 978, fn. Omitted, citing *In re Serrano* (1995) 10 Cal.4th 447, 456.)  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."' (*Drayton*, *supra,* at p. 979, quoting *Serrano, supra,* at p. 456.)" (*Lewis, supra*, 11 Cal.5th at p. 971.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' (*Drayton, supra, . . .* at p. 980.)" (*Id.* at p. 972.)

If the trial court determines that a prima facie showing for relief has been made, it must issue an order to show cause and hold a hearing "to determine whether to vacate the murder, . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced." (§ 1170.95, subd. (d)(1).)  During the evidentiary hearing, the prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens.  (§ 1170.95, subd. (d)(3).)

11

2. *Analysis*

The parties dispute whether the jury's felony-murder special circumstance findings made prior to *Banks* and *Clark* preclude Ortega from making a prima facie showing under section 1170.95, subdivision (e).  Relying on the *Torres* line of cases, Ortega asserts that these findings do not preclude relief as a matter of law.  The Attorney General disagrees, and asserts that under *Galvan* and its progeny, the special circumstance findings preclude Ortega from making a prima facie showing as a matter of law.

Pending guidance from the Supreme Court on this issue, and consistent with our prior decisions, we follow the *Torres* line of cases holding that a pre-*Banks* and *Clark* special circumstance finding "cannot preclude eligibility for relief under . . . section 1170.95 *as a matter of law*, because the factual issues that the jury was asked to resolve in a trial that occurred before *Banks* and *Clark* were decided are not the same factual issues our Supreme Court has since identified as controlling." (*York, supra,* 54 Cal.App.5th at p. 258; accord*, Smith, supra*, 49 Cal.App.5th at p. 93; *Torres, supra*, 46 Cal.App.5th at p. 1179.)

As amended by S.B. 1437, subdivision (e) of section 189 provides that participation in the perpetration or attempted perpetration of an enumerated felony (here, carjacking and kidnapping) in which a death occurs renders a person liable for murder only if the person was the actual killer, acted with the intent to kill as an aider and abettor, or was a major participant in the underlying felony and acted with

12

reckless indifference to human life as described in subdivision (d) of section 190.2. Section 190.2, subdivision (d), in turn, provides for a term of punishment by death or life imprisonment without the possibility of parole for persons "not the actual killer, [but] who, with reckless indifference to human life" and as major participants, aid, abet or assist in the commission of any felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree. Subdivision (a)(17) of section 190.2 lists carjacking and kidnapping as qualifying felonies. (§ 190.2, subds. (a)(17)(B), (a)(17)(L).)

The special circumstance findings in this case indicate that the jury found that Ortega, as an aider and abettor, either intended to kill or acted with reckless indifference to human life as a major participant in the robbery and burglary. However, because the jury rendered its findings approximately 11 years prior to the *Banks* and *Clark* decisions and did not specify whether Ortega acted with intent to kill, Ortega is not precluded from showing that he could not be convicted of first degree murder as redefined by S.B. 1437. (*Torres, supra*, 46 Cal.App.5th at p. 1179.)

The Attorney General asserts that the *Torres* line of cases was wrongly decided and urges us instead to follow the reasoning set forth in *Galvan* and its progeny. Pending resolution of this issue by the Supreme Court, we continue to follow the *Torres* line of cases.

The Attorney General contends that even under the *Torres* line of cases, any error by the trial court is harmless because Ortega's "actions

13

rise to the level required by *Banks* and *Clark*." However, the Supreme Court has clarified that a trial court's authority at the prima facie stage of review is "limited," in that it may not "engage in 'factfinding involving the weighing of evidence.'" (*Lewis, supra*, at p. 972, quoting *Drayton, supra*, 47 Cal.App.5th at p. 980.) Hence, we do not read section 1170.95 as precluding a petitioner from proffering evidence not presented at trial to dispute whether he or she was a major participant in the underlying felonies or acted with reckless indifference to human life. (See § 1170.95, subd. (d)(3) [at the hearing to determine the petitioner's entitlement to relief, "the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens"]; *Smith, supra,* 49 Cal.App.5th at pp. 95–96; *People v. Harris* (2021) 60 Cal.App.5th 939, 959–960, & fn. 13.) We therefore decline the Attorney General's request to engage in factfinding in the first instance in this appeal. We reverse the court's order summarily denying Ortega's petition and remand the matter with directions to the trial court to issue an order to show cause and hold a hearing under subdivision (d) of section 1170.95, in which the parties may introduce new or additional evidence to meet their respective burdens.

## DISPOSITION

The order summarily denying Ortega's section 1170.95 petition is reversed, and the matter is remanded with directions to issue an order to show cause and to proceed consistent with section 1170.95, subdivision (d).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.

15